**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LUIS A. DUTTON-MYRIE,** : | |
| : | |
| Petitioner : | |
| : | **CIVIL NO. 3:CV-13-2160** |
| v. : | |
| : | **(Judge Caputo)** |
| **CRAIG LOWE,** *et al.*, : | |
| : | |
| Respondents : | |

**M E M O R A N D U M**

**I.   Introduction**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by petitioner Luis A. Dutton-Myrie on August 12, 2013.  (Doc. 1, Pet.) Mr. Dutton-Myrie, a native and citizen of Panama, contests his continued detention by Immigration and Customs Enforcement (ICE) of the Department of Homeland Security.  He states that he has been detained by ICE since January 19, 2012 and seeks his release.

For the reasons set forth below, the Petition will be denied, however, ICE will be ordered to provide Mr. Dutton-Myrie with a Post-Order Custody Review if he has not yet had one in the past thirty days.

**II.   Background**

Mr. Dutton-Myrie was admitted to the United States on January 11, 1991, as a non-immigrant visitor for pleasure with authorization to remain in the United States

until July 10, 1991.  (Doc. 14-1, ECF p. 7.)  Mr. Dutton-Myrie did not leave the United States in July 1991.

Since then Mr. Dutton-Myrie accrued several criminal convictions, all within the York County Court of Common Pleas.  In 1992 Mr. Dutton-Myrie pled guilty to possession with intent to deliver and possession of cocaine.  (*Id*., ECF pp. 32-35.)  In 1994, after trying to escape from the York County Prison, he pled guilty to criminal attempt to commit escape and possessing weapons or implements for escape.  (*Id*., ECF pp. 25-29.)  The same year Mr. Dutton-Myrie also pled guilty to two counts of unlawful delivery of a controlled substance (cocaine).  (*Id*., ECF pp. 36-46.)

On February 15, 1997, he was issued an order to show cause and notice of hearing notifying him that he was subject to deportation for the following reasons: (1) having remained in the United States for a time longer than permitted in violation of § 237(a)(1)(B) of the  the Immigration and Nationality Act (INA), 8 U.S.C. § 1231; (2) being convicted of an aggravated felony following his entrance into the country (§ 237(a)(2)(A)(iii) of the INA); and (3) being convicted for an offense involving a controlled substance (§ 241(a)(2)(B)(i) of the INA).  (*Id*., ECF pp. 4-8.)  On April 13, 1998, an Immigration Judge (IJ) ordered Mr. Dutton-Myrie removed from the United States on account of him overstaying his visa and because he was convicted of an aggravated felony.  (*Id*., ECF pp. 49-51.)  Petitioner waived his appeal.  (*Id*., ECF p. 49.)

On May 15, 1998, ICE attempted to remove Mr. Dutton-Myrie by placing him on an airplane at the Newark International Airport bound for Panama.  (Doc. 1,

¶ 18.) However, Mr. Dutton-Myrie "managed to avoid deportation by getting off the air bus undetected before departing and stayed in the U.S. illegally." (*Id*.)

In August 2001, in the United States District Court for the Southern District of West Virginia, Mr. Dutton-Myrie pled guilty to making false statements in application for a United States passport. (Doc. 14-1, ECF p. 47.) On February 7, 2005, Mr. Dutton-Myrie was removed from the United States to Panama. (*Id*., ECF p. 51.) A few days after his arrival in Panama, Mr. Dutton-Myrie claims he was stabbed in the neck by members of the street gang MS-13. (Doc. 1, ¶ 20.)

On November 7, 2007, he was arrested in the United States District Court for the Middle District of Pennsylvania and charged with violating 8 U.S.C. §§ 1326(a) and (b)(2), illegal re-entry by a previously deported alien convicted of an aggravated felony. (Doc. 14-1, ECF pp. 52-54.) In 2011, after pleading guilty to this charge, Mr. Dutton-Myrie was sentenced by this court to a term of forty-four months and twenty-five days' imprisonment. *See USA v. Dutton-Myrie*, 3:07-CR-00445 (M.D. Pa.).

Mr. Dutton-Myrie was also arrested in 2007 for several counts of manufacture/delivery/possession with intent to manufacture or deliver a controlled substance in the Court of Common Pleas of Cameron County. (*Id*., ECF pp. 9-24.) In 2010, Mr. Dutton-Myrie pled guilty to one count of manufacture/ delivery/ possession of a controlled substance while the other counts were *nolle prossed*. (*Id*.)

On February 6, 2011, while Mr. Dutton-Myrie remained in custody of the Federal Bureau of Prisons (BOP), an IJ denied his request to reopen of his immigration proceedings and a stay of removal.  (*Id.*, ECF pp. 57-58.)

On January 19, 2012, Mr. Dutton-Myrie was released from the BOP to the custody of ICE.  (Doc. 1, ¶ 23.)  On February 15, 2012, Mr. Dutton-Myrie was served with a Notice of Intent/Decision to Reinstate Prior Order, notifying him that he was subject to removal pursuant to Section 241(a)(5) of the INA which reinstates a prior removal order when an alien illegally reenters the United States.  (*Id.*, ECF p. 60.)  Shortly thereafter, Mr. Dutton-Myrie expressed fear of returning to Panama and his case was referred to an Asylum Officer.

On March 20, 2012, the Asylum Officer referred Mr. Dutton-Myrie's request for deferral of removal pursuant to the Convention Against Torture Act (CAT) (8 C.F.R. § 1208.17(a)) to an IJ.  (*Id.*, ECF pp. 62-77.)  On September 20, 2012, after a hearing, the IJ denied Mr. Dutton-Myrie's request for deferral of removal under CAT and ordered him removed from the United States to Spain, and if Spain would not accept him, then Panama.  (Doc. 14-2, ECF pp. 1-9.)  Mr. Dutton-Myrie filed an appeal to the BIA.  On December 21, 2012, the BIA dismissed his appeal.  (*Id.*, ECF pp. 72-73.)

On January 13, 2013, Mr. Dutton-Myrie filed a Petition for Review with the United States Court of Appeals for the Third Circuit Court.  (Doc. 1, ¶ 31.)  The Government requested the Third Circuit Court of Appeals to remand the matter back to the BIA in light of new precedential case law.  (*Id.*, ¶ 35.)  On May 3, 2013, the Third Circuit Court of Appeals granted the Government's request and remanded the

case.  (Doc. 14-2, ECF p. 76.)  On August 15, 2013, the BIA vacated its order of December 21, 2012, and remanded the matter back to the IJ for further proceedings.   (*Id*., ECF p. 75.)

On September 12, 2013, an IJ held a second hearing regarding Mr. Dutton-Myrie's request for deferral of removal pursuant to the CAT.   (*Id*., ECF pp. 79-84.)  On September 18, 2013, the IJ again denied Mr. Dutton-Myrie's claim for deferral of removal.  (*Id*., ECF pp. 85-90.)  Mr. Dutton-Myrie filed another appeal to the BIA on September 30, 2013.  (*Id*., ECF p. 91.)   On February 25, 2014, the BIA remanded the matter back to the IJ for further consideration.  (Doc. 16, ECF pp. 2-3.)

In the interim, on March 18, 2013, ICE conducted a review of Mr. Dutton-Myrie's custody status and determined that he would not be released from ICE custody at that time.  (*Id*., ECF p. 77.)  Relying on his original removal order of April 13, 1998, as well as his criminal history following his illegal re-entry into the United States in 2005, ICE considers Mr. Dutton-Myrie "a threat to society and the issuance of a travel document proves your removal from the United States to be imminent."[1] (*Id*.)  ICE further noted that a "stay of removal has been granted" in his case and that he would "remain in ICE custody pending the disposition of [his] Stay of Removal."  (*Id*., ECF pp. 77-78.)  ICE advised that if Mr. Dutton-Myrie's stay had not

---

[1] ICE noted that his continued detention was based "on a review of [his] file and [his] personal interview and consideration of any information [he] submitted to ICE's reviewing officials."  (*Id*., ECF p. 77.)  In addition to his prior order of removal and subsequent illegal reentry, ICE also noted Mr. Dutton-Myrie's arrests for "Escape, Weapon of Implement for Escape, Kidnapping, Unlawful Restraint and Violation of CS/Drug/Dev. and Cosmetic Act," and convictions for "[t]hree charges of Violation of CS/Drug/Dev. and Cosmetic Act and False Statements in Application for a United States Passport."  (*Id*.)

been lifted within one year, he would be scheduled for a Post-Order Custody Review (POCR) and served with a Notice to Alien of File Custody Review.  (*Id.*) Although more than a year has passed, neither party has submitted any evidence to suggest that Mr. Dutton-Myrie was ever scheduled, or received, a POCR detention review.

Mr. Dutton-Myrie presently remains in ICE custody.

### III.    Discussion

Mr. Dutton-Myrie's sole contention is that his continued detention violates his due process rights.

First, the Court disagrees with both parties that Mr. Dutton-Myrie is subject to the detention provisions relating to 8 U.S.C. § 1226.  Respondent argues that his detention is governed by 8 U.S.C. § 1226(c), the mandatory detention of criminal aliens in removal proceedings who have committed qualifying aggravated felonies. Mr. Dutton-Myrie argues that he is not subject of a final order of removal as he continues to await a decision on his request for deferral of removal under the CAT and thus falls under the general category of pre-removal-order detention, 8 U.S.C. § 1226(a) (detention "pending a decision on whether the alien is to be removed from the United States.")  This Court disagrees with both parties as to the applicability of 8 U.S.C. § 1226 to Mr. Dutton-Myrie's present detention status.  Mr. Dutton-Myrie's present detention is mandated by 8 U.S.C. § 1231(a)(5) as he is detained pursuant to a final order of removal, his reinstatement of his prior and administratively final order of removal.  He is not being detained as a pre-final order detainee or a

criminal alien subject to a final order of removal who has yet to be removed from this country.[2]

Mr. Dutton-Myrie was previously adjudged removable, and in fact removed to Panama, for reasons including the commission of an aggravated felony following his entrance into this country. Following his illegal re-entry into this country, his prior order of removal was reinstated pursuant to 8 U.S.C. § 1231(a)(5). In such circumstances, the "prior order of removal is reinstated from its original date," and it "is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5); *see also Dinnall v. Gonzales*, 421 F.3d 247, 251 n. 6 (3d Cir. 2005)(quoting *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003))("an order reinstating a prior removal order is 'the functional equivalent of a final order of removal.'") Notwithstanding this seemingly absolute bar on immigration relief for such aliens like Mr. Dutton-Myrie who illegally re-enter the country following their removal, he may request withholding of removal or protection under the CAT. *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country ...")

---

    [2]    Under the pre-removal statute—8 U.S.C. § 1226(a)—ICE can detain any alien pending a decision in removal proceedings against that alien, and can release on bond any alien not otherwise ineligible for such release ... Once removal proceedings terminate in an order of removal, however, the alien's detention is governed by 8 U.S.C. § 1231(a).

*Leslie v. Att'y Gen.,* 678 F.3d 265, 268-69 (3d Cir. 2012); *see also Santos v. Sabol*, Civ. No. 3:14-CV-0635, 2014 WL 2532491 (M.D. Pa. Jun. 5, 2014) (Alien detained due to a reinstated order of removal but had pending reasonable fear application was properly detained pursuant to 8 U.S.C. § 1231(a)(6)).

In accordance with 8 U.S.C. § 1231(b)(3)(A), ICE administratively stayed Mr. Dutton-Myrie's order of removal while his petition for deferral of removal pursuant to the CAT is pending.  This stay is not a judicial stay of his final order of removal, it is an administrative stay pending the resolution of his CAT claim.  ICE does not have an election with respect to staying Mr. Dutton-Myrie's removal at this point because of the statutory prohibition of removing an alien to a country where his life or freedom would be threatened.  Mr. Dutton-Myrie's administrative stay has no impact on the finality of his order of removal as that order is not subject to judicial review and no court has imposed a stay of his removal.[3]  Thus, Mr. Dutton-Myrie remains detained pursuant to 8 U.S.C. § 1231 as he is subject to a final order of removal. *See* 8 U.S.C. § 1231(a)(5).

Next, having determined Mr. Dutton-Myrie's detention is governed by 8 U.S.C. § 1231 and not 8 U.S.C. § 1226, the Court now examines his claim that his prolonged detention, over thirty-four months, violates his due process rights.

As previously noted, detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231.  Pursuant to 8 U.S.C. § 1231(a), the Attorney General has ninety days to remove an alien from the United

---

[3] The basis of Mr. Dutton-Myrie's claim for deferral of removal under the CAT is not relevant to the instant proceedings as the petition itself does not have any impact on his removal order or continued detention.  The issue of those proceedings is not whether Mr. Dutton-Myrie can be removed from the United States (which ICE has previously demonstrated is possible), but rather whether he may be afforded protection from removal to Panama. Thus as previously shown, his removal is not a possibility, but a certainty.  The only question is what country he will be removed to once his withholding of removal claim is resolved.

States after his order of removal, during which time detention of the alien is mandatory.  Section 1231(a)(1)(B) provides the following:

>The removal period begins on the latest of the following:
>
>(i)   The date the order of removal becomes administratively final.
>(ii)  If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  The statute further provides that after the removal period the alien is to be released on supervision, § 1231(a)(3), unless he is a criminal alien, in which case he may be detained beyond the removal period if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal," § 1231(a)(6).  The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Zadvydas v. David*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699, 121 S.Ct. at 2503.  To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." *Id*. at 701, 121 S.Ct. at 2504.

Following *Zadvydas*, regulations were promulgated to meet the criteria established by the Supreme Court.  See 8 C.F.R. § 241.4.  Prior to the expiration of the mandatory ninety-day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished

during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Post Order Detention Unit (HQPDU) for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F .R. § 241.13(d)(1).

If at the conclusion of the six month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701, 2505. Not every alien must be released after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." (*Id*.)

Here, Mr. Dutton-Myrie has been in ICE custody since January 19, 2012. (Doc. 1, ¶ 23.) His previous order of removal (April 1998) was reinstated on February 15, 2012, pursuant to 8 U.S.C. § 1231(a)(5), § 241(a)(5) of the INA. (*Id*., ECF p. 60.) Thus, the presumptively reasonable six month removal period began running (at the latest) as of that date his prior order of removal was re-instated while he was in ICE custody, i.e. February 15, 2012. But for his request for withholding of removal under the CAT, ICE has demonstrated that "the issuance of a travel document proves [his] removal from the United States to be imminent." (Doc. 14-2,

ECF p. 77.) Thus, Mr. Dutton-Myrie has not demonstrated that he is entitled to relief under *Zadvydas*, which held that if removal is no longer significantly likely in the reasonable foreseeable future, continued detention is not authorized by statute. *Zadvydas,* 533 U.S. at 690, 121 S.Ct. at 2499. Mr. Dutton-Myrie has not met his burden of showing that ICE will not be able to remove him to Panama, or some alternate country, once his CAT claim is resolved and his administrative stay of removal is lifted.

To the extent Mr. Dutton-Myrie seeks a bond determination hearing, he is not entitled to such relief as 8 U.S.C. § 1231(a) does not provide aliens with a right to a hearing or a bond. Removable aliens like Mr. Dutton-Myrie who are held beyond the removal period are subject to release or continued detention at the discretion of the Attorney General. *See* 8 U.S.C. § 1231(a)(6). Moreover, on March 18, 2013, ICE reviewed Mr. Dutton-Myrie's custody status. (Doc. 14-2, ECF pp. 77-78.) ICE denied his release from detention based on the reasons set forth in his order of removal and subsequent criminal activities and found he was "a threat to society and the issuance of a travel document prove[d] [his] removal from the United States to be imminent."[4] (*Id*., ECF p. 77.) Anticipating the possibility that his CAT claim which triggered the administrative stay of his order of removal might not be resolved

---

[4] It is unquestioned that Mr. Dutton-Myrie was removed, in part, because he was an alien convicted of an aggravated felony. Mr. Dutton-Myrie's original order of removal was based on his remaining in this country longer than permitted and for committing an aggravated felon following his entrance into the United States. (Doc. 14-2, ECF pp. 4-8.) Mr. Dutton-Myrie pled guilty to the charge of illegal re-entry by a previously deported alien convicted of an aggravated felony before this court. Moreover, he does not contest that since his original removal he has committed several other felonies which in themselves would subject him to removal.

in a year, ICE declared that "[i]f [his] stay has not been lifted within one year, you will be scheduled for a Post-Order Custody Review (POCR) and served with a Notice to Alien of File Custody Review." (*Id*., ECF p. 78.) While ICE stayed his removal pending the resolution of his CAT claim, over a year later, his CAT claim remains unresolved and Mr. Dutton-Myrie has not had further review of his custody status. *See* Doc. 16, ECF pp. 2-3, Feb. 25, 2014, BIA Decision to CAT claim to IJ for Second Time.

     More than a year has past since Mr. Dutton-Myrie's last custody review. At this point jurisdiction to make a determination concerning his custody now lies with the HQPDU. Consequently, ICE will be ordered to treat Mr. Dutton-Myrie's petition as a request for a Post-Order Custody Review as set forth in the March 18, 2013 decision to continue his detention. ICE shall respond to the request within thirty days.

     An appropriate Order follows.

                                 **/s/ A. Richard Caputo**
                                 **A. RICHARD CAPUTO**
                                 **United States District Judge**

**Date: October 28, 2014**